Argued and submitted August 15, 2001, affirmed February 27, 2002

Michelle PISKORSKI,
*Appellant,*

*v.*

RON TONKIN TOYOTA, INC.,
an Oregon corporation,
*Respondent,*

*and*

Nicholas A. HAYES,
*Defendant.*

9811-08218; A109526

41 P3d 1088

Maureen Leonard argued the cause for appellant. With her on the brief was Peggy S. Foraker.

Stephen P. Rickles argued the cause for respondent. With him on the brief were William D. Okrent and Holmes & Rickles.

Before Armstrong, Presiding Judge, and Deits, Chief Judge,* and Kistler, Judge.

KISTLER, J.

---

* Deits, C. J., *vice* Warren, S. J.

**KISTLER, J.**

Plaintiff was injured in a car accident. She sued the other driver, Nicholas Hayes, and his employer, Ron Tonkin Toyota, Inc. The trial court entered judgment in Tonkin's favor after ruling on summary judgment that Tonkin was neither directly nor vicariously liable for Hayes' acts. We affirm.

Because this case arises on Tonkin's summary judgment motion, we state the facts in the light most favorable to plaintiff. *Brownstein, Rask, Arenz v. Pearson*, 166 Or App 120, 122, 997 P2d 300 (2000). Hayes was a sales manager for Tonkin. He was responsible for negotiating sales, appraising used cars, training salespeople, and assisting with advertising. Tonkin provided Hayes with a company car, or "demonstrator vehicle," and Hayes signed a "Company Car (Demo) Agreement," which required him, among other things, to maintain the car in accordance with the manufacturer's recommended maintenance schedule, keep it clean, and refrain from loaning the car to others.

On November 4, 1997, Hayes left work at Tonkin at approximately 5:00 p.m. He went first to the grocery store and then to a tavern. At approximately 7:30 p.m., Hayes ran a red light and hit plaintiff's car. Plaintiff sued both Hayes and Tonkin. Plaintiff's second amended complaint alleged that Tonkin negligently entrusted Hayes with a demonstrator vehicle when it knew or should have known that he was a dangerous driver. It also alleged that Tonkin was vicariously liable for Hayes' negligence because Hayes was acting within the course and scope of his employment when the accident occurred.

Tonkin moved for summary judgment. It submitted evidence that, in 1994, Hayes had applied for a job at a Tonkin dealership. On checking his driving record, Tonkin learned that he had no moving violations but that he had been involved in an accident in California in 1991. The record did not say who had been at fault. In 1996, Hayes applied to work at another Tonkin dealership. Tonkin checked his driving records again. The check showed no evidence of any license suspensions in the past. It also showed that Hayes

had been cited on November 4, 1993, for careless driving. He had been convicted of that offense on December 8, 1993, and had entered into a diversion agreement for driving under the influence of intoxicants.

Tonkin initially denied Hayes the use of a company car because three years had not passed since the 1993 citation. On November 6, 1996, Tonkin gave Hayes a company car to drive because, at that point, three years had passed without incident. Hayes left Tonkin to take another job but soon returned to Tonkin's Honda dealership, where he was given a company car. On October 8, 1997, Tonkin transferred him to its Toyota dealership to work as a sales manager and again provided him with a company car. He was driving a company car when he hit plaintiff's car on November 4, 1997.

Regarding plaintiff's vicarious liability claim, Tonkin submitted an affidavit from its general manager, which stated that Hayes was not working when the accident occurred and that "[n]one of his duties involved driving his vehicle as part of his job." Tonkin's Human Resources Director submitted an affidavit explaining that Hayes' duties were to serve as the desk manager and the used-car manager for the dealership. She also stated that Hayes "had no duties on the job which required him to drive the vehicle he was provided as an employee benefit." She submitted a copy of the company car agreement and repeated that "Hayes had no duties or obligations which were work-related after he left work each day at the dealership. He did not perform any services for the dealership from his home, or at any other premises than the dealership after his normal working hours." Based on that evidence, Tonkin argued that the court should grant its summary judgment motion.

Plaintiff's response was limited. She did not argue that a reasonable juror could infer from Tonkin's evidence that it had been negligent in providing Hayes with a car. Similarly, she did not argue that, in light of the affidavits from Tonkin's general manager and its human resources director, a reasonable juror could infer that Hayes had been acting within the course and scope of his employment when the accident occurred. Plaintiff instead relied solely on an

affidavit from her attorney to create a genuine issue of material fact. That affidavit stated:

"I have retained a qualified expert. This expert is available and willing to testify to admissible facts or opinions. I have a good faith belief that the expert's testimony would create questions of fact, which, if revealed by affidavit, would be a sufficient basis for denying Tonkin's motion for summary judgment in its entirety on both claims. The testimony covers both the issue of whether an employee driving a demo is ever off duty and whether any responsible dealer would have allowed this driver to drive one of its vehicles."

Tonkin moved to strike plaintiff's affidavit because it "relate[d] to conclusions of law and not to matters that may be proved by expert evidence." The trial court granted Tonkin's motion to strike, ruling that the issues on which plaintiff's expert sought to testify were not appropriate matters for expert testimony and would not be admissible at trial. Having struck the affidavit, the court ruled that there was no genuine issue of material fact, granted Tonkin's summary judgment motion, and entered judgment in Tonkin's favor. *See* ORCP 67 B.

On appeal, plaintiff argues that the trial court erred in striking her affidavit because the proffered evidence would have been helpful to the jury in resolving her claims. Tonkin responds that the court's evidentiary ruling was correct. It argues alternatively that, even if the expert's testimony were admissible, the affidavit was still insufficient to create a genuine issue of material fact.

We need not decide whether the expert testimony was admissible. Even if it were, we hold that the affidavit did not create a genuine issue of material fact. On that point, we note that this case arises in an unusual posture. At the summary judgment hearing plaintiff did not argue that, without the affidavit, a genuine issue of material fact existed. Rather, she relied exclusively on the affidavit to create a genuine issue of material fact. It follows that if, as Tonkin argues, the expert's testimony would have added nothing material to plaintiff's claims, the trial court did not err in granting Tonkin's summary judgment motion. *See Miller v. Salem Merchant Patrol, Inc.*, 165 Or App 266, 271-72, 995 P2d 1206

(2000) (holding that an appellant who challenges a summary judgment ruling is limited to the issues that he or she raised before the trial court).

If a party "is required to provide the opinion of an expert to establish a genuine issue of material fact," an attorney's affidavit asserting that a retained expert will provide admissible evidence is sufficient, without more, to create a factual dispute on that issue. ORCP 47 E; *Brownstein,* 166 Or App at 125; *Stotler v. MTD Products, Inc.*, 149 Or App 405, 408, 943 P2d 220 (1997).[1] Unless the affidavit specifies the issues on which the expert will testify, the trial court must presume that the expert will testify "on every issue on which summary judgment is sought." *Metropolitan Property & Casualty v. Harper*, 168 Or App 358, 364, 7 P3d 541 (2000). When, however, an affidavit specifies the issues on which an expert will testify, the court will presume that those are the only issues on which the expert's testimony will create genuine issues of material fact. *Stotler*, 149 Or App at 409 n 3; *Moore v. Kaiser Permanente*, 91 Or App 262, 265, 754 P2d 615, *rev den* 306 Or 661 (1988).

In this case, the affidavit specified that plaintiff's expert would testify: (1) "whether any responsible dealer would have allowed [Hayes] to drive one of its vehicles" and (2) "whether an employee driving a demo is ever off duty." Under *Stotler* and *Moore*, the question is whether that testimony would be sufficient to create material issues of fact on plaintiff's negligent entrustment and vicarious liability claims.

We begin with negligent entrustment. "A plaintiff in a negligent entrustment case must prove that there was an

---

[1] ORCP 47 E provides:

"If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion. The affidavit shall be made in good faith based on admissible facts or opinions obtained from a qualified expert who has actually been retained by the attorney who is available and willing to testify and who has actually rendered an opinion or provided facts which, if revealed by affidavit, would be a sufficient basis for denying the motion for summary judgment."

entrustment and that the entrustment was negligent." *Mathews v. Federated Service Ins. Co.*, 122 Or App 124, 133, 857 P2d 852, *rev den* 318 Or 25 (1993). There is no question that there was an entrustment in this case. The only question is whether the entrustment was negligent. We note that, because plaintiff does not claim that a special relationship existed between Tonkin and Hayes, Tonkin's actions are measured by a reasonable person standard. *Id.* at 133-34; *Page v. Sparling*, 87 Or App 118, 123, 741 P2d 535, *rev den* 304 Or 547 (1987). We also note that, when plaintiff opposed Tonkin's summary judgment motion, she did not argue that the evidence before the court on summary judgment was sufficient, without her expert's affidavit, to avoid summary judgment; that is, plaintiff did not dispute below that Tonkin's evidence—standing alone—showed that a reasonable person would not have been negligent in entrusting Hayes with a car.

The issue thus reduces to the question whether expert testimony that a reasonable dealer would not have allowed Hayes to drive one of its cars somehow changes that conclusion. Our opinion in *Mathews* guides our resolution of that issue. *See Mathews*, 122 Or App at 134. In *Mathews*, the plaintiff argued that the trial court should not have dismissed its negligent entrustment claim against an automobile dealer. *Id.* The plaintiff reasoned that a reasonable juror could find that the dealer had acted negligently because the dealer had rented a car to a 22-year-old driver in violation of its own rule against renting cars to anyone under 25 years of age. *Id.* We held that, because a 16-year-old may obtain a driver's license in Oregon, a person may entrust a car to someone that age without being negligent. *Id.* The fact that a dealer violated its own standards did not change that conclusion. *Id.*

This case is no different from *Mathews*. As noted, plaintiff did not argue below that a juror reasonably could infer from Tonkin's evidence that Tonkin had violated the reasonable person standard when it provided Hayes with a company car. The introduction of plaintiff's evidence does not change that conclusion: The fact that a reasonable dealer might be held to a higher standard did not make Tonkin's otherwise nonnegligent conduct negligent. The trial court did

not err in granting summary judgment on plaintiff's negligent entrustment claim.

Plaintiff also alleged that Tonkin was vicariously liable for Hayes' negligence. Two cases guide our review of that claim. The first case is *Wilford v. Crater Lake Motors, Inc.*, 277 Or 709, 561 P2d 1027 (1977). In *Wilford*, an automobile dealer's sales manager was involved in an accident while driving one of the company's cars to a pheasant hunt. *Id.* at 712. The driver of the other car sued the dealer, and the court held, on summary judgment, that the dealer was not vicariously liable for its sales manager's negligence. Given the dealer's policy of "permit[ting] its managers to use a company vehicle on trips outside of company business," the court concluded that there was no evidence in the record from which a reasonable juror could find anything other than a bailment and that a bailment was not sufficient to hold the dealer vicariously liable for its manager's acts. *Id.* at 712-13 (following *Palmer v. Van Petten Lbr. Co.*, 265 Or 347, 509 P2d 420 (1973)).

We reached a different conclusion in *Osterman v. Osgood*, 123 Or App 30, 858 P2d 893, *rev den* 318 Or 25 (1993). In that case, an employee of Volvo North America, Inc., had been involved in an accident while driving a company car; the driver of the other car had sued Volvo claiming that it was vicariously liable for its employee's negligence; and the trial court had granted Volvo's motion for summary judgment. *Id.* at 32. We reversed because the employee in *Osterman* was an instructor who used the cars that Volvo gave him as "demonstrators and hands-on mechanical examples in [his] classes." *Id.* Additionally, the car that Volvo had the employee drive was considered a "test vehicle," and the employee was required to submit a monthly " 'test vehicle evaluation form' cataloguing both the car's fuel efficiency and its overall mechanical performance." *Id.* at 33.

Given those facts, we explained that "[t]his is not a case in which the uncontradicted evidence shows that Volvo gratuitously loaned or rented [the employee] a car for personal use, thus creating a bailment relationship for which no vicarious liability can be imposed on Volvo." *Osterman*, 123 Or App at 34 n 2. Rather, we held that the nature of the

employee's job, the use of the test vehicle in Volvo's business, and Volvo's right to control its use, "taken together, could lead a reasonable jury to conclude that, whenever [the employee] drove the vehicle, there was 'some involvement of [Volvo] or some facet of [its] task which made the travel itself work-related or employer-sponsored.'" *Id.* at 34 (quoting *Runyan v. Pickerd*, 86 Or App 542, 546, 740 P2d 209, *rev den* 304 Or 279 (1987)).

In this case, Tonkin's evidence showed that "[n]one of [Hayes'] duties involved driving his vehicle as part of his job." It also showed that Hayes "had no duties on the job which required him to drive the vehicle he was provided as an employee benefit." In response to that evidence, plaintiff's expert would have testified whether "an employee driving a demo is ever off duty." At the hearing on Tonkin's motion to strike the affidavit, plaintiff's attorney told the trial court that "[t]here are standards in the industry about the use of demos, about what one is doing when one is driving one's employer's demo" and that her expert would offer testimony on that industry standard.

We agree with the trial court that the general testimony that plaintiff sought to offer did not create a disputed issue of material fact. Under *Wilford* and *Osterman*, the question whether an automobile dealer that provides a car to its employee will be vicariously liable turns on whether there is a "bailment relationship for which no vicarious liability can be imposed" or whether the particular circumstances of the relationship demonstrate that the employee's travel away from the work site was itself work related. *Osterman*, 123 Or App at 34 & n 2. Here, Tonkin's evidence established that there was only a bailment. Indeed, plaintiff did not argue below that any other inference could be drawn from Tonkin's evidence.

In response to that evidence, plaintiff did not seek to offer any facts about the particular circumstances of the relationship between Hayes and Tonkin or the reasons why Tonkin provided Hayes a car. Rather, plaintiff's expert would have testified generally about the standard practice in the industry. That generalized testimony is insufficient to create a disputed issue of fact about Tonkin's particular practices,

which under *Wilford* and *Osterman* is the relevant inquiry.[2] We accordingly agree with the trial court that plaintiff's affidavit was insufficient to create a genuine issue of material fact.

Affirmed.

---

[2] To the extent that plaintiff's expert would have testified that no dealership may provide its employees with cars without also incurring vicarious liability, that testimony would have been squarely inconsistent with the legal rule announced in *Wilford* and reaffirmed in *Osterman*. *See Wilford*, 277 Or at 713; *Osterman*, 123 Or App at 34 n 2.